## THE IDLEWILD.

### (District Court, S. D. New York. May 5, 1904.)

1. COLLISION—PASSING TOW AND ANCHORED YACHT—VESSEL ANCHORED OUTSIDE ANCHORAGE GROUNDS.

A yacht *held* in fault for a collision with a passing scow in tow while she was at anchor in New York Bay, in the night, on the ground that she was anchored outside the anchorage grounds without necessity, and the tug having the scow in tow also *held* in fault for failure to see and avoid the yacht.

In Admiralty. Suit for collision.

James J. Macklin, for libellant.
John F. Foley, for claimant.

ADAMS, District Judge.   This action arose out of a collision which occurred in the morning of October 4th, 1899, about 12:15 o'clock, between the libellant's schooner yacht Coronet and a scow in tow of the tug Idlewild, by which the yacht was considerably injured.   The yacht was at anchor off Quarantine, Staten Island, and the tug proceeding to sea with a tow of four scows, on a hawser.   The third one of the scows did the injury complained of.   The tide was ebb.

The testimony makes it clear that the yacht had anchored, without sufficient excuse, outside of the anchorage limits.   The wind was light but there would have been no great difficulty in getting out of the channel.   She was, therefore, in fault.   The Ailsa (D. C.) 76 Fed. 868, affirmed 86 Fed. 475, 30 C. C. A. 203; The James D. Leary (D. C.) 110 Fed. 685, affirmed 113 Fed. 1019, 51 C. C. A. 620.

There is a controversy as to whether the tug was also in fault.   I conclude that she was, because the yacht, though considerably outside of the anchorage limits, was fully lighted and easily to be seen by a careful observer.   She was avoided by a number of other tows going to sea on the same tide.

The mate of the tug, who was in charge of her navigation at the time, testified that a lookout was stationed forward but the person was not produced and if he were there, he made no reports and was evidently not attending to his duties.   The mate did not see the yacht's lights until after the collision, when he looked back in consequence of it and then saw the anchor light.   Before reaching the yacht he had been looking back to watch his tow.   He claims that he could not have seen the yacht's lights before he did, because of the electric lights of a large steamer, but it is not sufficiently explained how such lights could have interfered, as the nearest steamer was several hundred feet to the westward and somewhat below the yacht.   The tug should also be found in fault.   The Steamboat New York, etc., et al. v. Rae, etc., 18 How. 223, 15 L. Ed. 359.

Decree for the libellant for half damages.